IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHAVEZ LAW OFFICES, P.A.,
a New Mexico corporation,

    Plaintiff,

vs.                                                 Case No. 1:21-CV-00293-LF-SCY

TYLER TECHNOLOGIES, INC.,
a foreign corporation,

    Defendant.

## MOTION TO COMPEL ARBITRATION

Plaintiff Chavez Law Offices, P.A. ("Plaintiff") agreed to arbitrate any dispute with Defendant Tyler Technologies, Inc. ("Tyler") in Plano, Texas when Plaintiff entered into a user agreement for access to and use of the Odyssey File and Serve application. Because all of Plaintiff's claims must be arbitrated in Texas rather than resolved in this forum, Tyler respectfully moves this Court to stay the litigation and compel arbitration of Plaintiff's claims for relief.

**I.    INTRODUCTION**

Tyler is a software provider focused on the public sector. Among its many offerings, Tyler provides electronic filing services through its proprietary software program known as Odyssey File and Serve ("Odyssey"). Odyssey permits attorneys and other litigants to file court documents electronically, resulting in the reduction or elimination of paper-based filings and an increase in processing efficiencies. Odyssey users, which include attorneys and law firms, obtain a license which allows them to file legal documents electronically. Odyssey users are also required to pay fees for filing, service, or both, as well as a convenience fee.

Odyssey is an online service; all accounts are created online and expressly subject to Tyler's "Odyssey File & Serve Usage Agreement" ("User Agreement"). *See* User Agreement

for the State of New Mexico attached to the Declaration of Jamie Gillespie ("Gillespie Decl."), Ex. A.  The terms and conditions in the User Agreement must be expressly acknowledged by a user at the time the account is opened.  Indeed, each user, including Plaintiff, is required to affirmatively click a check box stating "I Agree" before an Odyssey account can be created:



The terms and conditions contain a detailed arbitration procedure to which Plaintiff expressly consented at the time it opened its Odyssey account.  The arbitration provision in its entirety provides as follows:

> **Section 10. Arbitration**
>
> Any controversy or claim *arising out of or relating to this Agreement*, which is not settled by reasonable negotiations between the parties, *will be settled by arbitration that will be binding on all parties*.  Each party expressly agrees to be bound to any results of such arbitration and not to dispute in any way, at law or otherwise, the decision rendered by such arbitration. Judgment upon the award

rendered by the arbitrator may be entered by any court having jurisdiction thereof. The arbitration will be conducted by a single arbitrator and agreed rules if all parties can agree upon such arbitrator and rules, and if such agreement cannot be reached between the parties, the arbitration will be arbitrated by a single arbitrator in accordance with the rules of the American Arbitration Association, which decision will be binding on the parties. The arbitrator will not be empowered to award punitive damages to either party. *The arbitrator will be a person from the locality of Plano, TX* and *the arbitration hearing will be held in the Plano, TX* metropolitan area. The cost of arbitration will be borne equally by the parties unless the arbitrator makes a final determination, which determination will be binding upon the parties, that one of the parties should be regarded as the prevailing party as to the matters submitted to the arbitration, in which event the non-prevailing party will bear all costs related to the arbitration. Notwithstanding the foregoing, either party may, on good cause shown, seek a temporary restraining order and/or a preliminary injunction from a court of competent jurisdiction, to be effective pending the institution of the arbitration process and the deliberation and award of the arbitrator.

*See* Gillespie Decl., Ex. A (emphasis added).

The dispute resolution procedure in Section 10 is modeled after the procedure approved by the United States Supreme Court in the seminal decision of *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). The inclusion of such provisions is standard on consumer websites – and equally widely enforced.

Tyler's arbitration provision is fully enforceable. Where, as here, the parties are subject to a binding arbitration agreement, "a federal district court … *shall*, on application of a party, stay the litigation pending arbitration, and make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (citing 9 U.S.C. §§ 3, 4) (emphasis added). Tyler respectfully requests that the Court enter such an order here.

## II.   BACKGROUND

### A.   Procedural Background

Plaintiff filed its lawsuit against Tyler on February 23, 2021, in the Second Judicial District Court of Bernalillo County. Tyler removed the action to this Court based on diversity

3

jurisdiction. This motion to compel arbitration is filed in lieu of an answer, as is permitted under the circumstances. *See* Jay A. Grenig, *Alternative Dispute Resolution* § 23:3 at 574 (3d ed. 2005) ("A defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint."); *see also Lamkin v. Morinda Properties Weight Parcel, LLC,* No. 11-4022, 2011 U.S. App. LEXIS 19275, (10th Cir. Sept. 19, 2011) (unpublished).

### B.   Plaintiff's Allegations

In its Complaint, Plaintiff acknowledges that it entered into the User Agreement. ("The [User] Agreement between the parties is valid and binding on all parties.") (Compl. ¶ 15).[1] Plaintiff alleges numerous purported breaches of the User Agreement, including that Tyler has charged Plaintiff for pleadings that were rejected but failed to refund the amounts charged (*see* Compl. ¶¶ 14-15); that "Defendants were aware of the [User] Agreements and contractual obligations to refund and/or credit Plaintiff for any charges associated with rejected pleadings" (Compl. ¶ 18); that "Defendants refused to credit/refund charges for rejected pleadings and maintained that said charges were never charged in the first place, but 'held' by Plaintiff's financial institution" (Compl. ¶ 19); and that as a result, Defendants "fail[ed] to perform as listed in the agreements" and "breached their duty of good faith and fair dealing in the execution of this contract" (Compl. ¶ 23).

These general allegations are incorporated into, and form the basis of, each of the six counts of the Complaint. The First Claim for Relief alleges "negligence" for breach of the User Agreement. (Compl. ¶¶ 13-16). The other claims are for "Fraud" (Compl. ¶¶ 17-20); "Violation of the Unfair Trade Practices Act" (Compl. ¶¶ 26-28); "Negligence Per Se" (Compl. ¶¶ 29-34); and "Unconscionable Trade Practices" (Compl. ¶¶ 35-40). All of these claims are intertwined

---

[1] Plaintiff failed to serve a copy of the User Agreement with its Complaint, as required by Rule 1-009(I) NMRA. (There is no similar requirement under the federal rules, however.)

with and based on the User Agreement, and therefore are required to be arbitrated as set forth in the Agreement.

### C. Account Setup and Agreement to Arbitrate

Plaintiff "signed up for Defendant's services sometime prior to August, 2010." (Compl. ¶ 6). In order to register for the online account, Plaintiff was required to click the "I Agree" box. (Gillespie Decl., ¶ 6.) Plaintiff's account was then created pursuant to the terms and conditions of the User Agreement. Plaintiff was not unique in this respect; *all* Odyssey users must affirmatively consent to the terms and conditions by clicking the "I Agree" box in order to open an Odyssey account. There are no exceptions. (*Id*., ¶ 7). Moreover, the check box provides immediate access (via the hyperlink) to the terms and conditions themselves – which are not particularly lengthy. Plaintiff, like all Odyssey users, was then sent a confirmation email which confirmed creation of Plaintiff's account. (*Id*., ¶ 8.)

## III. ARGUMENT

### A. The FAA Governs Enforcement Of The Parties' Arbitration Agreement.

The parties' agreement to arbitrate is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1 *et seq.* Arbitration under the FAA "is a matter of consent … , and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989). Courts generally "enforce arbitration agreements according to the terms of the parties' contract." *Adams v. United-Bilt Homes, LLC*, 2014 U.S. Dist. LEXIS 29520, at *4 (N.D. Okla. Mar. 7, 2014) (citing *Volt*, 489 U.S. at 479) ("[B]ecause '[t]he thrust of the [FAA] is that arbitration is strictly a matter of contract,' the parties to an arbitration agreement should be 'at liberty to choose the terms under which they will arbitrate.'") (citation omitted); *see also, e.g.*, *Adams,* 2014 U.S. Dist. LEXIS 29520, at *4; *Perez v. Qwest Corp.*, 883

F. Supp. 2d 1095, 1113 (D.N.M. 2012) ("Here, the parties have agreed by contract that the FAA will apply to arbitration.").

The FAA applies if the "contract evidenc[es] a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.* 539 U.S. 52, 56 (2003) (citation omitted). "Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'...." *Id.* at 56 (citation omitted). Indeed, the FAA applies even to in-state contracts that merely affect interstate commerce. *Id.* at 56-58.

The FAA standard for "involving commerce" is low. So long as a defendant is "engaged in business throughout [more than one state];" "purchas[es] substantial quantities of goods that have moved in interstate commerce;" or is generally engaged in a business with "broad impact ... on the national economy," its arbitration agreements are governed by the FAA. *Id.* at 57-58.

Electronic court filing services certainly meet that definition, given that they facilitate the processing of lawsuits that impact the national economy and administration of justice. The User Agreement readily satisfies the lenient standard for triggering FAA application.

> **B.    The FAA Strongly Favors Enforcement Of Agreements To Arbitrate**

The FAA "'strongly favors enforcement of agreements to arbitrate.'" *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010); *Comanche Indian Tribe v. 49, LLC*, 391 F.3d 1129, 1131 (10th Cir. 2004) ("liberal federal policy favoring arbitration"). Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements," "to place [these]

6

agreements on the same footing as other contracts," and to "manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted). In preserving the benefits of arbitration, "Congress … had the needs of consumers, as well as others, in mind." *Allied-Bruce*, 513 U.S. at 280. Indeed, because it "allow[s] parties to avoid the costs of litigation," arbitration benefits individuals with "smaller" claims (*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001)), including "the typical consumer" who otherwise would be left "without any remedy but a court remedy, the costs and delays of which could eat up the value of an eventual small recovery". *Allied-Bruce*, 513 U.S. at 281.

  **C.**  **Applicable Legal Standard**

  Under the FAA, the movant need make only a *prima facie* showing that the parties entered into a contract that contains an arbitration provision. *See, e.g.*, *Vernon v. Qwest Commn's Int'l, Inc.*, 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012) (stating "*prima facie*" standard and finding it met); *Rangel v. Hallmark Cards, Inc.*, 2010 U.S. Dist. LEXIS 19755 at *13 (D. Kan. Mar. 4, 2010) (same); *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 341 (5th Cir. 2004) ("Under the FAA, a written arbitration agreement is prima facie valid" and typically "must be enforced[.]"); *Hines v. Overstock.com, Inc.*, 380 F. App'x. 22, 24 (2d Cir. 2010) ("party seeking to invoke FAA" need only "make prima facie initial showing that an agreement to arbitrate existed").

  Once a *prima facie* case is presented, the burden then shifts to the opposing party to show that the arbitration provision is unenforceable under legal principles that would invalidate any contract:

> "An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, … save upon such grounds as exist at law or in equity for the revocation of *any* contract."

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (quoting 9 U.S.C. § 2) (emphases in original); *see also, e.g.*, *Vernon*, 857 F. Supp. 2d at 1148-49 (same); *Mortensen v. Bresnan Comm'cns, LLC*, 722 F.3d 1151, 1157-58 (9th Cir. 2013) (same).

This last point is crucial. The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and "to place [these] agreements upon the same footing as other contracts." *Waffle House*, 534 U.S. at 289. If an arbitration provision encompasses the parties' dispute, then the FAA "requires courts to enforce" the parties' agreement to arbitrate – except on grounds that would invalidate any contract. *Volt*, 489 U.S. at 478.

### D. The User Agreement Is An Enforceable Contract

The User Agreement, including the dispute procedure terms and conditions, is an enforceable contract. Plaintiff clicked the box stating "I Agree" to the terms and conditions governing its use of Odyssey. This is a classic "clickwrap" agreement, which "is a commonly used term for agreements requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed'". *Hancock v. AT&T Co.*, 701 F.3d 1249, 1255 (10th Cir. 2012) (internal quotation marks omitted).

Clickwrap agreements are fully enforceable under New Mexico law. Under New Mexico law, "[a] party may manifest her assent to an offer by written or spoken words or by other acts or failures to act." *THI of N.M. at Vida Encantada, LLC v. Archuleta*, 2013 U.S. Dist. LEXIS 80584 at *20 (D.N.M. Apr. 30, 2013) (citing Rest. (Second) of Contracts § 19 (1981)). Clicking "I Agree" [to the Terms & Conditions] is exactly the sort of "clear, positive, and unambiguous" act of acceptance that indicates mutual assent under New Mexico law. *Mosley v. Titus*, 762 F. Supp. 2d 1298, 1319 (D.N.M. 2010) (quoting *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 11, 134 N.M. 630, 81 P.3d 573); *Tatsch v. Hamilton-Erickson Mfg. Co.*, 1966-NMSC-193, ¶ 10, 76 N.M. 729, 418 P.2d 187).

In the words of the Tenth Circuit, "[c]lickwrap agreements are increasingly common and have routinely been upheld." *Hancock*, 701 F.3d at 1256 (internal quotation marks omitted); *see also, e.g.*, *Bar-Ayal v. Time-Warner Cable Inc.*, 2006 U.S. Dist. LEXIS 75972 at *43 (S.D.N.Y. Oct. 16, 2006) (arbitration provision upheld where software installation required user to click through "accept" buttons on screens, and "the Customer Agreement, including the arbitration provision, … was available in full to the individual"); *Vernon*, 857 F. Supp. 2d at 1149 (assent found where consumer "presented with a 'clickwrap' or 'click-through' agreement … is required to affirmatively click an 'I agree' box after being presented with a list of terms and conditions of use") (emphasis added); *Pazol v. Tough Mudder Inc.*, 2015 U.S. Dist. LEXIS 52784 at *4-6 (D. Mass. Apr. 22, 2015) ("'[C]lickwrap' agreements are commonly enforced in Massachusetts and Federal Courts."); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 953 F. Supp. 2d 713, 719-23 (N.D. Tex. 2013) ("valid clickwrap agreement").

### E. The Arbitration Agreement Clearly Applies To The Parties' Dispute

The parties' agreement to arbitrate plainly applies to the present dispute. Plaintiff invokes the User Agreement and its breach in every one of the counts in its Complaint. Plaintiff alleges that it has wrongfully been charged for, and never refunded, fees incurred when pleadings it filed using Odyssey were rejected by courts in New Mexico. While Tyler vigorously denies Plaintiff's claims, they undeniably arise out of and relate to the services provided under the User Agreement. Broad arbitration clauses cover all claims, whether pled in contract or tort "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [contract]". *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987).

## IV. CONCLUSION

Tyler respectfully requests that the Court grant this Motion and compel Plaintiff to arbitrate its claims against Tyler.

Pursuant to D.N.M.LR-Civ. 7.1(a), Tyler's counsel conferred in good faith with opposing counsel, who opposes this motion.[2]

          RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

          By: *"Electronically Filed" /s/ Leslie McCarthy Apodaca*
              Leslie McCarthy Apodaca
          Post Office Box 1888
          Albuquerque, New Mexico 87103
          Telephone:  (505) 765-5900
          Facsimile:  (505) 768-7395
          E-mail:  lapodaca@rodey.com

          *Attorneys for Defendant Tyler Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, I filed the foregoing using CM/ECF which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

    Gene N. Chavez
    gene@chavezlawoffices.com

          RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

          By: */s/ Leslie McCarthy Apodaca*
              Leslie McCarthy Apodaca

---

[2] At opposing counsel's request, Tyler sent him a copy of the motion to review prior to determining his position, and indicating that his failure to respond would be deemed opposition. Opposing counsel did not respond; the motion is thus presumably opposed.