IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHAVEZ LAW OFFICES, P.A.,
a New Mexico corporation,

        Plaintiff,

vs.                                             1:21-cv-00293-LF-SCY

TYLER TECHNOLOGIES, INC.,
a foreign corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff Chavez Law Offices, P.A.'s ("Chavez") Motion to Remand Action to State Court, filed on March 31, 2021. Doc. 4. Defendant Tyler Technologies, Inc. ("Tyler") filed its response to Chavez's motion on April 12, 2021. Doc. 11. Chavez did not file a reply within the time to do so and therefore consents that briefing on the motion is complete. *See* Doc. 15 (Notice of Completion of Briefing); D.N.M.LR-Civ. 7.1(b).[1] This matter also comes before the Court on Tyler's Motion to Compel Arbitration, filed on April 5, 2021. Doc. 7. Chavez filed its response on April 6, 2021. Doc. 8. Tyler filed its reply on April 15, 2021 and filed a notice of the completion of briefing on April 28, 2021. Docs. 13, 14.

Having read the parties' submissions and the relevant law, the Court finds that the motion to remand is not well taken and will DENY it. The Court finds that the motion to compel arbitration is well taken and will GRANT it.

---

[1] "A reply must be served and filed within fourteen (14) calendar days after service of the response." D.N.M.LR-Civ. 7.4(a). Chavez had through April 26, 2021, to file a reply.

I.      **Plaintiff's Motion to Remand**

Chavez initiated this lawsuit in the Second Judicial District Court in the State of New Mexico. Doc. 1-1. Tyler removed the action to this Court alleging diversity jurisdiction. Doc. 1 at 2. Removal of cases from state to federal court is governed by 28 U.S.C. § 1441(a), which provides that "any civil action brought in State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States . . . where such action is pending." 28 U.S.C. § 1441(a). A United States district court has jurisdiction of civil actions involving citizens of different states where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). "A defendant seeking to remove a case to federal court has the burden of proving that the district court possesses jurisdiction." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). The requirements for diversity jurisdiction must be proven by the preponderance of the evidence. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); *see also Hanna v. Miller*, 163 F. Supp. 2d 1302, 1305–06 (D.N.M. 2001). Jurisdiction is determined at the time of removal; later events do not disturb the district court's jurisdiction once it has attached. *Williamson*, 481 F.3d at 375.

There is no dispute that the parties in this case are citizens of different states. Chavez is a New Mexico corporation located in Bernalillo County, New Mexico. Doc. 1-1 ¶ 1. Tyler is a Delaware corporation with its principal place of business in Texas. Doc. 1 at 2. In its motion to remand, Chavez contends that the amount in controversy does not exceed $75,000 and therefore the case must be remanded to state court. Doc. 4. Tyler counters that based on the allegations in the complaint, the amount in controversy exceeds the $75,000 threshold required for federal

jurisdiction. Doc. 11. The Court agrees with Tyler that the amount in controversy meets the jurisdictional requirement.

To determine whether the amount in controversy reaches the jurisdictional requirement, "the court must examine the facts existing at the time of removal and determine whether those facts prove to a reasonable probability—*i.e.*, that it is more likely than not—that the jurisdictional amount was met." *Hanna*, 163 F. Supp. 2d at 1305–06 (internal citation and quotations omitted). "The amount in controversy is ordinarily determined by the allegations of the complaint." *Martin*, 251 F.3d at 1290. "In making this determination, courts may consider the substance and nature of the injuries and damages described in the pleadings." *Hanna*, 163 F. Supp. 2d at 1306. When calculating the amount in controversy, the district court should consider both actual damages and punitive damages, including treble damages, that may be recoverable under the complaint. *Bell v. Preferred Life Assur. Soc'y of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) (punitive and actual damages can be aggregated to meet the amount in controversy); *Duran v. Marathon Asset Mgmt., LP*, 621 F. App'x. 553, 554 (10th Cir. 2015) (unpublished) (noting the court must consider punitive damages when determining the amount in controversy); *Barreras v. Travelers Home & Marine Ins. Co.*, 2012 WL 12870348, at *3 (D.N.M. Oct. 17, 2012) (unpublished) (finding that the trebled damages, in addition to the compensatory damages, exceeded the minimum amount in controversy); *Esquibel-Mead v. Am. Gen. Life Ins. Co.*, 2021 WL 2209922, at *2 (D.N.M. June 1, 2021) (unpublished) (finding that the amount in controversy requirement was met where plaintiff's complaint sought treble damages and attorneys' fees on top of the compensatory damages). "As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees."

*Williamson*, 481 F.3d at 376; *see also Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."). "Every separate and distinct claim must individually meet the amount in controversy." *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994).

Chavez expressly states in its compliant that it has "suffered financial harm in an amount to be determined at trial, but is not more than $74,999.00 . . . ." Doc. 1-1 ¶¶ 16, 24.  Each of Chavez's claims, however, seeks punitive or treble damages.  In Chavez's first, second, and third causes of action Chavez alleges that "the acts of defendants alleged herein were willful, wanton, reckless, and/or intentional, thereby entitling Plaintiffs to an awar[d] of punitive damages." *Id*. ¶¶ 16, 20, 25.  In Chavez's fourth and sixth causes of action, Chavez is seeking attorney's fees and treble damages pursuant to New Mexico's Unfair Practices Act ("NMUPA"). *Id*. ¶¶ 27–28, 39–40 (citing N.M. STAT. ANN. §§ 57-12-10 (B), (C)).  Finally, Chavez's claim for negligence per se is based on the NMUPA. *Id*. at 29–34.  The remedy for a violation of the NMUPA includes actual and treble damages.  The statue also expressly allows for the payment of attorney's fees if the complaining party prevails on their claim under the NMUPA.  N.M. STAT. ANN. §§ 57-12-10 (B), (C).  Although Chavez contends that his damages do not exceed $74,999.00, given Chavez's claims for punitive damages and attorney's fees and treble damages under the NMUPA, it is more likely than not that the amount in controversy meets the jurisdictional requirement.  The Court, therefore, finds that this Court has original jurisdiction based on diversity and will deny Chavez's motion to remand.

### II.     Defendant's Motion to Compel Arbitration

A. Background Facts

Tyler is a software provider that provides (among other services) electronic filing services through its proprietary software program known as Odyssey File and Serve ("Odyssey"). Doc. 7 at 1. As Tyler explains, "Odyssey permits attorneys and other litigants to file court documents electronically." *Id.* "Odyssey users, which include attorneys and law firms, obtain a license which allows them to file legal documents electronically," and they pay fees for these services. All Odyssey accounts "are created online and are expressly subject to Tyler's 'Odyssey File & Serve Usage Agreement' ('User Agreement')." *Id.* Each user is required to agree to the User Agreement at the time an account is opened and "is required to affirmatively click on a box stating 'I Agree' before an Odyssey account can be created." *Id.* at 2; Doc. 7-1 at 2. The User Agreement specific to New Mexico contains an arbitration provision that states:

> Any controversy or claim arising out of or relating to this Agreement, which is not settled by reasonable negotiations between the parties, will be settled by arbitration that will be binding on all parties. Each party expressly agrees to be bound to any results of such arbitration and not to dispute in any way, at law or otherwise, the decision rendered by such arbitration. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The arbitration will be conducted by a single arbitrator and agreed rules if all parties can agree upon such arbitrator and rules, and if such agreement cannot be reached between the parties, the arbitration will be arbitrated by a single arbitrator in accordance with the rules of the American Arbitration Association, which decision will be binding on the parties. The arbitrator will not be empowered to award punitive damages to either party. The arbitrator will be a person from the locality of Plano, TX and the arbitration hearing will be held in the Plano, TX metropolitan area. The cost of arbitration will be borne equally by the parties unless the arbitrator makes a final determination, which determination will be binding upon the parties, that one of the parties should be regarded as the prevailing party as to the matters submitted to the arbitration, in which event the non-prevailing party will bear all costs related to the arbitration. Notwithstanding the foregoing, either party may, on good cause shown, seek a temporary restraining order and/or a preliminary injunction from a court of competent jurisdiction, to be effective pending the institution of the arbitration process and the deliberation and award of the arbitrator.

Doc. 7 at 2–3; Doc. 7-1 at 9–10.

Chavez alleges that sometime prior to August of 2010, Chavez signed up to use Odyssey "to file and serve legal documents in New Mexico." Doc. 1-1 ¶ 6. Since that time, Tyler has rejected approximately 216 filings submitted by Chavez. *Id.* ¶ 7. Chavez was charged for each rejected filing, and Tyler did not credit or refund Chavez for those rejected filings. *Id.* ¶ 9. Although Chavez has inquired about being charged for the rejected filings, Tyler has refused to refund charges related to the rejected filings. *Id.* ¶¶ 8, 12. Accordingly, Chavez filed this lawsuit in state court alleging negligence, fraud, breach of the duty of good faith and fair dealing, violation of the New Mexico Unfair Practices Act, negligence per se, and unconscionable trade practices. *Id.* ¶¶ 13–40.

Tyler filed its motion to compel arbitration pursuant to the arbitration provision in the User Agreement. Doc. 7. Tyler argues that this Court should enforce the arbitration provision of the User Agreement, and it requests that the Court stay the litigation pending arbitration and order the parties to proceed to arbitration in accordance with the terms of the agreement. *Id.* at 3. The parties do not dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* governs the arbitration provision. *Id.* at 5–7; *see generally*, Doc. 8 (Chavez does not dispute that the FAA governs the arbitration provision).

B.  Discussion

The FAA applies to arbitration provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, such arbitration provisions "are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. Section 2 of the FAA creates "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). To

implement this substantive rule, a party may apply to a federal court for a stay of the trial in an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

Describing the FAA as "a liberal federal policy favoring arbitration," the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and, accordingly, that "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ("The FAA requires courts to enforce arbitration agreements according to their terms.") (internal quotation and citation omitted). Generally, courts rely on state contract principles to construe the terms of an arbitration agreement, but the FAA preempts state law "to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." *Lamps Plus*, 139 S. Ct. at 1420 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)). Federal policy requires arbitration unless the arbitration agreement is not part of a contract evidencing interstate commerce or is revocable upon grounds applicable to any contract. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997).

Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). In applying state law, a court may not construe an arbitration agreement differently from how it construes non-arbitration agreements under state law. *Avedon*, 126 F.3d at 1287. In enacting the FAA, Congress did not intend to force parties to arbitrate in the absence of an agreement, and therefore the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id.* at 1286–87. When the parties dispute

the existence of a valid arbitration agreement, the presumption in favor of arbitration disappears. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "On a motion to compel arbitration, the district court's role is to determine (1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement." *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1189 (D.N.M. 2018) (internal citations omitted).

Courts generally will enforce agreements according to their terms, but arbitration under the FAA "is a matter of consent, not coercion." *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989). "[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Gilmer*, 500 U.S. at 33 (internal quotations omitted). Courts generally apply state law on the formation of contracts to determine whether a party agreed to arbitrate a dispute. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

The FAA "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under Section 4 of the FAA, a court may order the parties to arbitrate "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. When the making of an arbitration agreement is at issue, the court must proceed to the trial of that issue. *Id.*

The framework for determining a motion to compel arbitration is similar to summary judgment practice. *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1177

(10th Cir. 2017). "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Id*. On a motion to compel, the court must give the party opposing arbitration the benefit of all reasonable doubts and inferences. *Hancock v. Am. Tel. and Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012). When there are no genuine issues of material fact regarding the agreement to arbitrate, the court may decide the arbitration issues as a matter of law. *See id.*; *Avedon*, 126 F.3d at 1283.

Here, there are no genuine issues of material fact regarding the existence of an agreement to arbitrate or Chavez's failure to comply with that agreement. As Tyler explains, to sign up and use Odyssey, each customer is presented with its User Agreement, including the arbitration provision, as a "clickwrap" agreement. Doc. 7 at 8–9. A "clickwrap" agreement is an agreement that "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Feldman v. Google*, *Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007); *see also Hancock*, 701 F.3d at 1255. To create its account with Tyler, Chavez was required to affirmatively click a box acknowledging awareness and acceptance of Tyler's User Agreement. Doc. 7 at 2.

"To determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Feldman*, 513 F. Supp. 2d at 236; *see also Hancock*, 701 F.3d at 1256 ("Courts evaluate whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to

9

read the agreement, and the consumer manifested an unambiguous acceptance of the terms."). This standard is consistent with New Mexico law, which requires a showing of "mutual assent" for a contract to be enforceable. *See Flemma v. Halliburton Energy Servs., Inc*., 2013-NMSC-022, ¶ 28, 303 P.3d 814, 822 ("For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent."). "Clickwrap agreements are increasingly common and have routinely been upheld." *Hancock*, 701 F.3d at 1256 (citation omitted). Notably, "[f]ederal courts have consistently enforced clauses contained in clickwrap agreements" similar to the one at issue here, where the agreement is "presented via a hyperlink to a page separate from the one containing the box or button manifesting assent." *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190–91 (D.N.M. 2018) (collecting cases).

Chavez had reasonable notice of and manifested assent to Tyler's clickwrap agreement. Chavez acknowledges that prior to August 2010, it opened an Odyssey account to file and serve documents in New Mexico. Doc. 1-1 ¶ 6. Chavez does not dispute that to set up its account, it was required to click a box stating "I Agree" to Odyssey's User Agreement, which included the agreement to arbitrate. *See* Doc. 7 at 2. A reasonably prudent internet user would have known of the existence of the terms in Tyler's User Agreement, which was viewable prior to agreeing to its terms. *See Davis*, 303 F. Supp. 3d at 1191. Tyler has thus demonstrated that Chavez had reasonable notice of Tyler's User Agreement, including the arbitration provision. Further, Tyler has demonstrated that, by clicking on the box acknowledging awareness and acceptance of Tyler's User Agreement when creating its account, Chavez indicated assent to the terms of Tyler's User Agreement. Because "the requirements of an express contract for reasonable notice of terms and mutual assent [thus] are satisfied," Tyler has presented evidence sufficient to demonstrate the existence of an enforceable agreement. *Id*. (quoting *Feldman*, 513 F. Supp. 2d

at 238). Chavez failed to comply with the arbitration provision and, instead, filed a lawsuit. I am satisfied that there are no issues of material fact regarding the making of the agreement to arbitrate and Chavez's failure to comply with that agreement. An order to arbitrate is appropriate. Chavez's arguments to the contrary are unavailing.

First, Chavez argues that arbitration may only commence after reasonable negotiations and that there have been no reasonable negotiations in this case. Doc. 8 at 1–2. The arbitration provision states that "[a]ny controversy or claim arising out of or relating to this Agreement, which is not settled by reasonable negotiations between the parties, will be settled by arbitration that will be binding on all parties." Doc. 7-1 at 9. Because "[t]o date, there has been absolutely no reasonable negotiations," Chavez argues that the arbitration provision does not yet apply. Doc. 8 at 2. This argument is misplaced. The fact that there have been no reasonable negotiations does not invalidate a valid arbitration provision. If that were the case, a party to an otherwise valid arbitration agreement could simply refuse to negotiate, invalidating the arbitration provision. For example, in this case, rather than pursue negotiations, Chavez initiated this lawsuit because "the runaround by Defendant's representatives regarding the refund of charges made to Plaintiff's debit card." Doc. 8 at 2. The arbitration provision is not invalid simply because Chavez believes Tyler did not pursue reasonable negotiations.

Moreover, the phrasing of the arbitration agreement does not make the failure to reasonably negotiate a prerequisite to arbitration. The provision does not state that the parties must engage in negotiations prior to arbitration. Rather, it states that "[a]ny controversy or claim arising out of or relating to this Agreement, **which is not settled by reasonable negotiations between the parties**, will be settled by arbitration that will be binding on all parties." Doc. 7-1 at 9 (emphasis added). In other words, if a controversy or claim is not settled by reasonable

negotiation—whether negotiations are pursued or not—that controversy or claim will be settled by arbitration that will be binding on all parties. Finally, even if the Court were to interpret the contract to require reasonable negotiation, which it does not, the result after any such negotiation would still be arbitration, not litigation. Accordingly, the controversies and claims arising out of the User Agreement will be decided by an arbitrator, not the Court.

Second, Chavez argues that the arbitration provision is unconscionable and that there has been no discovery surrounding the making of the contract to determine whether there are grounds for revoking that contract. Doc. 8 at 2–3. This argument is without merit. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 262, 208 P.3d 901, 907. "The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives." *Id.*

> Substantive unconscionability concerns the legality and fairness of the contract terms themselves. The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns.
> Procedural unconscionability goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.

*Id.*, 2009-NMSC-021, ¶¶ 22–23, 146 N.M. 256, 262–63, 208 P.3d 901, 907–08 (internal citations omitted).

Chavez does not argue that the arbitration provision is substantively unconscionable. Quoting *Cordova*, 2009-NMSC-021, ¶ 23, 146 N.M. 256, 262–63, 208 P.3d 901, 907–08, Chavez states that the analysis to determine unconscionability "involves considering 'the

particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.'" Doc. 8 at 2. The analysis Chavez references pertains specifically to procedural unconscionability. *Cordova*, 2009-NMSC-021, ¶ 23, 146 N.M. 256, 262–63, 208 P.3d 901, 907–08. Chavez argues that "[a]t this point no discovery has been conducted and the Defendant has filed the Motion to Compel Arbitration without reference to the surrounding circumstances as listed above." *Id*. Consequently, Chavez contends, the request for arbitration is premature. *Id*.

As discussed above, the formation of the User Agreement is not at issue. Chavez does not dispute Tyler's evidence of the factual circumstances surrounding the formation of the contract. "When the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . ." *BOSC, Inc.*, 853 F.3d at 1177 (internal citation and quotations omitted). Even if a material dispute did exist, "the FAA calls for a summary trial—not death by discovery." *Id*. "While certain procedures under § 4 of the FAA 'can look a lot like summary judgment,' a motion to compel arbitration sets in motion a summary trial procedure rather than the usual discovery procedures." *Id*. 853 F.3d at 1176 (10th Cir. 2017) (quoting *Howard v. Ferrellgas Partners*, 748 F.3d 975, 978 (10th Cir. 2014)).

Tyler presented evidence on the formation of the contract, including that the terms and conditions must explicitly be accepted by clicking the "I Agree" box when an account is opened. Chavez does not dispute the facts surrounding the formation of the contract or present evidence that contradicts the facts presented by Tyler. Indeed, Chavez acknowledges that he opened an account to use Tyler's services more than ten years ago and has been using the service since

13

before 2010. Chavez does not explain what additional discovery is necessary, and the Court finds that there is no dispute of fact with regard to the formation of the User Agreement. Consequently, Chavez's argument that the Court should not order arbitration before the parties conduct discovery is without merit.

Finally, Chavez argues that because it alleged fraud in its complaint, that the arbitration clause can be invalidated due to fraud, duress, and unconscionability. This argument is unpersuasive. "Courts may invalidate arbitration agreements through the application of generally applicable contract defenses, such as fraud, duress, or unconscionability, without violating the FAA." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 52, 304 P.3d 409, 422. Under New Mexico law, a party to a contract may defend a breach of contract claim by arguing that a contract is void because of a misrepresentation by the other party. Misrepresentations by one party can make a contract voidable by the other party. *See, e.g.*, *Gross Kelly & Co. v. Bibo*, 1914-NMSC-085, ¶¶ 17, 35, 145 P. 480, 485, 487. "In order for this to occur, the recipient of the misrepresentation must show that (1) there was a misrepresentation that was (2) material or fraudulent and which (3) induced the recipient to enter into the agreement, and that (4) the recipient's reliance on the misrepresentation was justified." *Sisneros v. Citadel Broadcasting Co.*, 2006-NMCA-102, ¶ 19, 140 N.M. 266, 272, 142 P.3d 34, 40. To void the User Agreement, Chavez must show that Tyler's misrepresentations induced it to enter the agreement.

Chavez's claim for fraud is based on allegations that Tyler was "aware of the Agreements and contractual obligations to refund and/or credit Plaintiff for any charges associated with rejected pleadings," and that Tyler's claims that the funds are being held by Chavez's financial institution are not true. Doc. 1-1 ¶¶ 10–12, 18–20. Chavez's fraud claim is not based on a

14

misrepresentation that induced Chavez to enter into the User Agreement. Instead, Chavez alleges that after it entered the agreement, Tyler told Chavez that certain charges were being held by Chavez's financial institution, knowing those statements to be untrue. *Id*. Because Chavez does not allege that Tyler made a misrepresentation that induced it to enter into the User Agreement, Chavez cannot avoid the arbitration agreement based on fraud.

I find that the User Agreement contains a valid arbitration agreement, and that there is no dispute that the controversy in question falls within the scope of that agreement. Chavez's arguments to the contrary are unavailing. The Court, therefore, will grant Tyler's motion to compel arbitration.

IT IS THEREFORE ORDERED that

1. Plaintiff Chavez Law Offices, P.A.'s Motion to Remand Action to State Court (Doc. 4) is DENIED;
2. Tyler's Motion to Compel Arbitration (Doc. 7) is GRANTED; the parties must proceed to arbitration in accordance with the terms of the arbitration provision of the User Agreement.
3. This case is STAYED pending arbitration. The parties will notify the Court within 15 days of the completion of the arbitration for entry of judgment upon the award rendered by the arbitrator.

Laura Fashing
United States Magistrate Judge
Presiding by Consent